IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAY CALDWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:08-cv-00122 |
| | ) | |
| SUPERINTENDENT LOUIS FOLINO; | ) | Chief Magistrate Judge Amy Reynolds Hay |
| LIEUTENANT M.A. PRICE; SGT. | ) | |
| GAGNON; C.O. J. MILLER; C.O. | ) | |
| LUKACHYK; C.O. TOPKA; C.O. SOKOL; | ) | |
| JEFFREY A. BEARD, Secretary of | ) | |
| Correction; and LT. NORMAN, | ) | |
| | ) | |
| Defendants. | ) | Re:  Dkt. [40] |

<u>MEMORANDUM OPINION</u>

Clay Caldwell ("Plaintiff") is serving a life sentence in the Department of Corrections

("DOC").  He was incarcerated at SCI-Greene during the events that give rise to this civil rights

suit.  All nine Defendants are employed by the DOC and all but one of them, i.e., Secretary

Beard, were employed at SCI-Greene.  Presently pending before the court is Defendants' motion

to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), which the court will grant for the most part.

Plaintiff's pro se complaint is not a model of clarity but it essentially concerns several

incidents.  They are as follows.

First, Plaintiff alleges that Defendant Corrections Officer ("CO") Sokol conducted pat

searches[1] or pat down frisks of Plaintiff in an attempt to harass Plaintiff sexually.  Plaintiff filed a

grievance (No. 200085) against CO Sokol on September 7, 2007.  Dkt. [12] at 4.  Prior to

---

[1] A "pat search" "involves a pat-down of the inmate's outer clothing for the purpose of
determining whether he is carrying weapons or contraband."  Dkt. [41] at 9, n.1 (quoting <u>Smith v.
Fairman</u>, 678 F.2d 52, 53 (7th Cir. 1982)).

completing the grievance process however, Plaintiff executed and filed the instant pro se complaint.

Plaintiff also complains that on November 4, 2007, Defendant Sokol falsely accused Plaintiff of a misconduct and had him placed in the Restricted Housing Unit ("RHU"). According to the misconduct report, when Defendant Sokol ordered Plaintiff to step over for a pat search Plaintiff threatened Sokol, refused to obey his orders and was verbally abusive. Dkt. [40-2]. Plaintiff alleges that the pat downs constituted sexual harassment because CO Sokol would "rub my inner thighs, touch my groin, and around my butt [sic]". Dkt. [12] at 4. As the November 4, 2007 encounter between Plaintiff and CO Sokol unfolded, Defendant Norman allegedly approached Plaintiff and said to him to "watch what I say out of my mouth[.]"[2] Id. at 4.

Plaintiff next alleges that prior to being transferred to the RHU, Plaintiff had to go through an inventory of his property with Corrections Officers and have some of it packed up because he could not have all of his property in the RHU. Plaintiff complains that in the course of the inventory process, he was told by guards that he had too much property and some of it would have to be destroyed. In fact, Plaintiff alleges that Defendants Lukachyk, Gagnon and Miller destroyed certain of Plaintiff's property, including a coffee mug, a TV antennae and a footlocker. Id. at 6-7. Plaintiff alleges that Defendant Topka asked Sergeant Gagnon what should be done with Plaintiff's TV antennae and escorted Plaintiff away from the property inventory when it was later halted. Id. at 7-8. In addition, Plaintiff asserts that Defendant Topka told Plaintiff that he messed up during the inventory. Id. at 8.

---

[2]This is the sole allegation in the complaint against Defendant Norman.

During the inventory, Plaintiff asserts that Defendant Gagnon did not permit Plaintiff to remove pictures of his family that were taped to a piece of cardboard and instead, Gagnon removed them, apparently in a rough or destructive manner. Id. at 7-8. Plaintiff then asked for a grievance but was allegedly denied one, whereupon Plaintiff refused to sign the inventory sheet. At that point, Defendant Gagnon halted the inventory process and indicated it would be completed the following week. Id. Thereafter, Plaintiff alleges that he received another allegedly false misconduct from Defendant Miller, who accused Plaintiff of disobeying an order to remain seated during the inventory process. Id. at 8.

When the inventory of his property resumed, Plaintiff asserts that Defendant Gagnon handcuffed Plaintiff too tightly en route to the inventory area, but Plaintiff "wasn't saying to[o] much." Id. at 9. Plaintiff also accuses Gagnon of tearing up Plaintiff's legal work, i.e., an "Allowance of Appeal." Id. at 7.

Other complaints include an accusation against Defendants Lukachyk and Gagnon of putting their fingers in Plaintiff's "medicine bag," a spiritually significant item for Plaintiff, who is a practitioner of Native American spirituality. Plaintiff also accuses Defendant Gagnon of referring to the items contained in the medicine bag as junk and crap. Id. at 9.

Plaintiff's sole complaint against Defendant Price appears to be that he twice admitted in the grievance responses he authored, that Plaintiff's foot locker was indeed broken. Id. Plaintiff complains that Defendant Price is liable for the unlawful conduct of his officers and in lying in his responses to Plaintiff's grievances. Id. at 10.

The sole allegation against Defendant Folino is that he knew of the destruction of Plaintiff's property and "did nothing but stated his officers were right in his investigation[.]" <u>Id.</u> at 11.

The sole allegation against Defendant Beard is that he is "liable for knowing of the wrong doings of his employee's [sic] here at SCI-Greene once the grievance system has been used in full and for allowing the wrongs; not to make them right as he is the boss of the correctional system." <u>Id.</u> at 13.

Plaintiff contends that the foregoing violates his First, Fourth, Fifth, Eighth and Fourteenth Amendment due process and equal protection rights. <u>Id.</u> at 3, ¶ III. The difficulty is that Plaintiff does not relate which events give rise to which claims of constitutional violations.

We note preliminarily that Plaintiff seeks mostly money damages, however, he also appears to want injunctive relief in two forms: first, to have "the jobs" of Defendants Price, Gagnon and Miller, and second, to have contact visits with family and friends. To the extent that Plaintiff seeks contact visits, such requested injunctive relief is wholly unrelated to the wrongs alleged in the complaint and as such are improper and are stricken. <u>See</u>, <u>e.g.</u>, <u>Martin v. PA Dept. of Corrections</u>, NO. CIV. A. 08-1604, 2009 WL 983006, at *1 (W.D.Pa., April 9, 2009)("<u>Williams v. Platt</u>, 2006 WL 149024, at *2 (W.D.Okla. Jan.18, 2006) holding that a preliminary injunction is inappropriate to address wrongs wholly unrelated to the complaint)"); <u>Emile v. SCI-Pittsburgh</u>, No. CIV A 04-974, 2006 WL 2773261 (W.D.Pa. Sept. 24, 2006). To the extent that Plaintiff seeks to have Defendants who were employed at SCI-Greene fired, such

relief became moot upon Plaintiff's transfer out of SCI-Greene,[3] assuming the court ever had the power to order the firing of DOC employees.  Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa. 1998).

*Standard of Review and the PLRA*

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544  (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).[4]  Under this standard, the court must, as a general rule, accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001). Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.

---

[3] Recently, Plaintiff filed a notice of change of address, indicating that he was moved from SCI-Greene to SCI-Greensburg.  Dkt. [63].

[4] In light of Twombly's overruling of the Conley v. Gibson standard that provided motions to dismiss should only be granted if "no relief could be granted under any set of facts," we reject Plaintiff's invocation of that Conley standard.  Dkt. [45] at 10.

1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Twombly, 550 U.S. at 554 (quoting Papasan v. Allain, 478 U.S.  265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6).  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).  In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004), held that a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the indisputably authentic exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]"  Twombly, 550 U.S. at 555-556.  Or put another way,  a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In addition, because Plaintiff was a prisoner at the time of the filing of this civil action,[5] and because he named governmental entities or employees thereof as defendants, the screening

---

[5]  See, e.g., In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies.");  Colby v. Sarpy County, No. 4:01CV3130, 2006 WL 519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply herein.  In addition, because he complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted *in forma pauperis* status to pursue this suit.   The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss.  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000).  Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA.  See Lopez; Dare v. U.S., CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd, 264 Fed.Appx. 183 (3d Cir. 2008).

All parties have consented to the plenary exercise of jurisdiction by the undersigned.  Dkt. Nos. [2] & [46].

*Discussion*

(1)  Claims against various Defendants

We first take up the  Defendants' argument that Plaintiff fails to state a claim against Defendants Beard, Folino, Norman and Price because the complaint reveals that they lack any personal involvement in the wrongs.  Dkt. [41] at 4 to 7.  We agree.

In order to succeed under Section 1983, a plaintiff must adduce evidence that the defendants were personally involved in the deprivation of rights as there is no respondeat superior liability permitted under Section 1983.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)("liability [in a civil rights action] cannot be predicated solely on the operation of

7

respondeat superior."); McClelland v. Facteau, 610 F.2d 693, 695 (10ᵗʰ Cir. 1979) ("Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way."). "A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d at 1207. "Personal involvement can be shown through allegations of personal direction or of actual [contemporaneous] knowledge and acquiescence." Id. Accord Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("Her amended complaint likewise does not contain even a remote suggestion that Attorney General Fisher had **contemporaneous**, personal knowledge of her transfer and acquiesced in it.") (emphasis added).

As pointed out by the Defendants, Plaintiff's allegations against Defendants Beard and Folino are based solely upon either their roles in the grievance process or their roles as supervisors. Actually, in the case of Defendant Beard, the Court notes that he has no role in the grievance process, rather, it is the Chief of the Secretary's Office of Inmate Grievances and Appeals that is the final appeal level for grievances.[6]

In response, Plaintiff contends that "Louis Folino and security knew of my property being destroyed in request slips [that Plaintiff sent] on 11-6-07. . . . So how could Lt. Price be allowed Qualified Immunity. The only one's who should get it is Lt. Norman and Jeffrey Beard, because

---

[6] See, e.g., DOC DC-ADM 804 IV. D & P (definitions of "Chief, Secretary's Office of Inmate Grievances and Appeals" ("SOIGA") and of the SOIGA itself) and 804 V.D (explaining appeals to the SOIGA) available at:

http://www.cor.state.pa.us/standards/lib/standards/DC-ADM_804_Inmate_Grievances.pdf

they really did not know."  Dkt. [45] at 9.[7]  We take the last sentence to be essentially a

concession by Plaintiff that Defendants Norman and Beard did not possess contemporaneous

knowledge of the destruction of Plaintiff's property and hence, cannot be held liable for such

destruction.  Hence, any claims against Defendants Beard and Norman based upon the alleged

destruction of Plaintiff's property must be dismissed for failure to state a claim upon which relief

can be granted.

As to Defendant Price, his sole role alleged in the complaint was his responses in the

grievance review system wherein he allegedly lied in the responses.  Such is insufficient as a

matter of law to render Defendant Price liable.

For the rule is that "[t]he failure of a prison official to act favorably on an inmate's

grievance is not itself a constitutional violation."  Rauso v. Vaughn, No. CIV. A. 96-6977, 2000

WL 873285, at *16 (E.D.Pa., June 26, 2000).  See also  Overholt v. Unibase Data Entry, Inc.,

221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir. 2000) ("The defendants were not

obligated to 'properly' respond to Overholt's grievances because there is no inherent

constitutional right to an effective prison grievance procedure. Hence, his allegations that the

defendants did not properly respond to his grievances simply do not rise to the level of a

constitutional violation.") (citations omitted); Mitchell v. Keane, 974 F.Supp. 332, 343

(S.D.N.Y.  1997) ("it appears from the submissions before the court that Mitchell filed

grievances, had them referred to a prison official, and received a letter reporting that there was no

evidence to substantiate his complaints.  Mitchell's dissatisfaction with this response does not

---

[7] It is not quite clear why Plaintiff is arguing qualified immunity as the Defendants did  not
appear to raise that as a defense. Nor is it clear what Plaintiff means by "qualified immunity." However,
below, we do rely upon qualified immunity in part.

constitute a cause of action."); Caldwell v. Beard, NO. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008)("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd, __ Fed.Appx. __, 2009 WL 1111545 (3d Cir. April 27, 2009); Caldwell v. Hall, NO. CIV.A. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000)("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); Orrs v. Comings, No. CIV.A. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct. 13, 1993)("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); Jefferson v. Wolfe, NO. CIV A. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006)("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. See Watkins v. Horn, 1997 WL 566080 at * 4 (E.D.Pa..[sic]1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement)").

In the alternative, Defendants Price and Folino, as well as Beard, should be dismissed because the complaint alleges, at most, that these Defendants failed to discipline the allegedly responsible actors or take corrective action after Plaintiff's property was destroyed, damaged or desecrated. However, such actions or inactions which, concededly occurred only **after** the alleged constitutional violations had already occurred, cannot be said to have been the "cause" of Plaintiff's constitutional injuries. Without such causation there can be no liability. See, e.g., Ricker v. Weston, 27 Fed.Appx. 113, 119 (3d Cir. 2002) ("This decision not to discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred before the decision.").

Accordingly, the complaint should be dismissed for failure to state a claim against Defendants Beard, Folino, Norman and Price.

(2) Fourteenth Amendment Procedural Due Process claims

In the alternative, Plaintiff's Fourteenth Amendment procedural due process claims based upon the destruction of his property must be dismissed because the complaint alleges at most an intentional destruction of his property in violation of DOC policy. See Dkt. [12] at 5 ("the Corrections Officers . . . had me to destroy my property and send out property that was in compliance with DOC policy" i.e., property which DOC policy permitted me to possess). Reading the complaint and the exhibits attached thereto and Plaintiff's response to the motion to dismiss, it is apparent that Plaintiff claims DOC policy permitted him to have all of the property that was thrown out or destroyed by the Defendants. See, e.g., id.; Dkt. 45-3 at 2 ("LOUIS FOLINO AND LT. PRICE ARE SUPPOSE[D] TO KNOW THE POLICY ON ITEMS FROM THE MASTER COMMISSARY LIST, I'M ALLOWED TO HAVE BUT STILL CLAIM IT WAS CONTRABAND ANDSTILL [sic] LET . . . LT. PRICE, SGT. GAGNON AND THE REST DO WHAT THEY DID. (DESTROYED MY PROPERTY."). Such allegations fail to state a claim of denial of procedural due process because although the property may have been taken (i.e., destroyed), it was not taken without procedural due process because state law provides an adequate post-deprivation remedy, which is all that is required under such circumstances. Albright v. Oliver, 510 U.S. 266, 283-84 (1994) (Kennedy, J. concurring in the judgment)("we can assume, arguendo, that some of the interests granted historical protection by the common law of torts . . . are protected by the Due Process Clause. Even so, our precedents make clear that a state actor's random and unauthorized deprivation of that interest cannot be

11

challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy."); Hudson v. Palmer, 468 U.S. 517 (1984).

In Hudson v. Palmer, the Supreme Court held that an intentional deprivation of property accomplished in violation of state policy, does not violate the plaintiff's procedural due process rights so long as there is a meaningful post-deprivation remedy. Hudson v. Palmer, 468 U.S. at 533. The federal courts of Pennsylvania have recognized that both the Department of Corrections' internal grievance procedure and the availability of a state tort suit in state court provide adequate post-deprivation remedies so as to satisfy due process requirements under Hudson v. Palmer. See, e.g., Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies); Rogers v. Mrs. Brown, No. Civ. A. 95-7867, 1996 WL 608473, at *2 (E.D. Pa. Oct. 24, 1996) (tort suit in state court provides adequate post-deprivation remedy for deprivation of legal papers); Payton v. Horn, 49 F. Supp.2d 791, 795 (E.D. Pa. 1999)(same), abrogated on other grounds, Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). The availability to Plaintiff of either post-deprivation remedy of the DOC grievance procedures and/or a state tort action for conversion of property means that Plaintiff, cannot as a matter of law, make a claim under the Fourteenth Amendment for a deprivation of property without procedural due process. Payton v. Horn, 49 F. Supp.2d at 795 ("Pennsylvania tort law offers a remedy for prison official's unlawful deprivation of an inmate's property. Therefore, Payton has failed to state a viable claim that his constitutional rights have been violated and cannot maintain a section 1983 action on this claim.")(citations omitted); Reid v. Seville, No. CIV. A. 96-2577, 1996 WL 421901, at *3 (E.D.Pa. July 19,

1996)(same).  Accordingly, the Fourteenth Amendment procedural due process claim must be dismissed.

Next, we consider Plaintiff's claim that Defendant Sokol, and possibly Defendant Miller, made false misconduct charges against him.  To the extent that Plaintiff intends thereby to state an Eighth Amendment claim, he fails as a matter of law, as Defendants point out.  Dkt. [41] at 10 to 11.  The false misconduct charges alleged in the complaint simply do not deprive the Plaintiff of the minimum of life's necessities.  See, e.g., Williams v. Reynolds, 198 F.3d 248 (Table), 1999 WL 1021856, at *2 (6th Cir. 1999) ("Williams's claims against Ellison fail to state an Eighth Amendment claim because neither verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment.").  Nor does the filing of false misconduct charges deprive Plaintiff of any procedural due process rights under the Fourteenth Amendment.  Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); see also Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)("So long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."); Person v. Campbell, 182 F.3d 918 (Table), 1999 WL 454819, at *1 (6th Cir. 1999) ("the filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."); Porter v. King, No. Civ.A. 04-1228, 2006 WL 3490582, at *3 (W.D.Pa. Dec. 4, 2006)("To the extent that the operative complaint alleges merely that Defendant King filed a false disciplinary report against Plaintiff, the court would agree that such a claim fails to state a claim upon which relief can be

granted."); <u>Nelson v. Commonwealth of Pennsylvania</u>, No. Civ. A.97-6548, 1997 WL 793060, at *3 (E.D.Pa. Dec. 9, 1997) ("The filing of a false or unfounded misconduct charge against an inmate does not constitute a deprivation of a constitutional right.").

(3) First Amendment Claims

To the extent that Plaintiff intends his claim of false misconduct charges to state a First Amendment claim, i.e., the right to be free of retaliation, this claim fails as well. In order to state a retaliation claim, a plaintiff must show: (1) that he engaged in constitutionally protected activity; (2) that he was subject to adverse actions by a state actor; and (3) the constitutionally protected activity was a substantial motivating factor in the state actor's decision to take adverse action. <u>Anderson v. Davila</u>, 125 F.3d 148, 161 (3d Cir. 1997) (<u>citing</u>, <u>Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1997)). Even if a plaintiff establishes these elements, the defendant can still prevail if the state actor can show that it would have taken the same action without the unconstitutional factors. <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. at 287. In the prison context, the State actor may rebut a plaintiff's claim by showing that the State actor's actions were motivated by legitimate penological objectives. <u>Pratt v. Rowland</u>, 65 F.3d 802 (9th Cir. 1995). If the prison officials make such a showing, then Plaintiff cannot state a retaliation claim successfully. <u>Rauser v. Horn</u>, 241 F.3d 330, 334 (3d Cir. 2001) ("This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."); <u>Iseley v. Dragovich</u>, 90 Fed.Appx. 577, 581 (3d Cir. 2004) (upholding summary judgment, the Court held that "[a]ssuming arguendo that Iseley

met his initial burden under *Rauser* regarding the retaliatory denial of medical care ... the defendants have shown that they would have arrived at the same decision regarding appropriate [medical] treatment ... .").

As noted by the Defendants, Plaintiff pleaded guilty to Defendant Sokol's misconduct charge of disobeying a direct order. The Defendants did so by appending the indisputably authentic hearing examiner's adjudication to their Motion to Dismiss. The Defendants argue that Plaintiff's pleading guilty establishes as a matter of law that the action taken by Sokol in writing up the misconduct would have occurred even if Plaintiff had not filed a grievance against Defendant Sokol previously. Plaintiff does not contend that he did not plead guilty, nor does he otherwise argue in his response against this line of defense. Hence, we agree with the Defendants. Because Plaintiff was found guilty of the misconduct based upon his guilty plea, he is essentially barred from succeeding on his retaliation claim because such a finding of guilt as to the misconduct charge conclusively establishes that Defendant Sokol would have taken the same actions regardless of any protected activity engaged in by Plaintiff. Wright v. Kellough, 202 F.3d 271 (Table), 1999 WL 1045787 (6th Cir. 1999) (inmate could not state claim of retaliation where he was found guilty of misconduct charge giving rise to retaliation claim); Vercheres v. Wilkinson, 194 F.3d 1315 (6th Cir. 1999)(Table),1999 WL 801542, at *1 ("Thus, Vercheres's retaliation claim was properly dismissed, as the finding that he was guilty of stalking satisfied the defendants' burden of showing that the guard would have charged him with a violation, even if Vercheres had not filed a grievance."); Harris-Debardelaben v. Johnson, 121 F.3d 708 (Table), 1997 WL 434357, at *1 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (being found guilty of a prison rule

violation based on some evidence "essentially checkmates [the] retaliation claim."); Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993) (if discipline which the prisoner claims to have been retaliatory was imposed for actual violation of prisoner rules, prisoner's claim of retaliation must fail). Accordingly, Plaintiff's First Amendment retaliation claim must be dismissed for failing to state a claim upon which relief can be granted.

There may be another First Amendment claim in the complaint. This First Amendment claim may be that Plaintiff was denied access to court in violation of his First Amendment rights. Plaintiff alluded to this when he complained that Defendant Gagnon tore up Plaintiff's allowance of appeal during the inventor process. Defendants argue that the complaint fails to state a claim upon which relief can be granted because Plaintiff has not sufficiently pled facts concerning the case which the allowance of appeal involved. The complaint, in fact, does not identify which case the appeal relates to or whether it was a copy of an allowance of appeal that had already been filed or if it was not a copy of one that was already filed, whether there was another copy of it or whether Plaintiff could re-create it or whether Plaintiff was able to file it notwithstanding Defendant Gagnon's alleged actions in destroying it. As a member of this Court has succinctly explained:

> In Christopher v. Harbury, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415.

O'Connell v. Sobina, No. 1:06cv238, 2008 WL 144199, at *10 (W.D.Pa. Jan. 11, 2008). The allegations of the instant complaint lack the required information regarding the suit to which the Allowance of Appeal related so as to permit this court to conduct its non-frivolousness analysis of the underlying suit. Accordingly, the First Amendment denial of access to courts claim must be dismissed for failure to state a claim.

The last potential First Amendment claim that we find in the complaint is the alleged act of Defendants Gagnon and Lukachyk in searching Plaintiff's medicine bag, which we deem to be a claim of infringement of Plaintiff's right to freedom of religion. Plaintiff's claim appears to be merely because the medicine bag is religious or sacred to him, it is exempt from searches. The question before the court is simply whether a search of a medicine bag conducted during an inventory of Plaintiff's property states a claim under Turner v. Safely, 482 U.S. 78, 89 (1987). We find that such searches, even of religious property, are reasonably related to a legitimate penological interest, i.e., security, as a matter of law. Hammer v. King, No. CS-09-0023, 1990 WL 117868, at *2 (E.D.Wash. Aug. 6, 1990) (upholding prison regulation under Turner permitting confiscation of medicine bags that are not on an inmate's inventory of personal property). Hence, for this reason alone, any putative First Amendment free exercise claim fails to state a claim upon which relief can be granted.

Even if it were otherwise, Defendants Gagnon and Lukachyk would be entitled to qualified immunity for their conduct in searching the medicine bag because it was not clearly established in November 2007 that search of a medicine bag during an inventory of Plaintiff's property would violate Plaintiff's First Amendment right to freely practice his religion. See, e.g., Martinez v. Ortiz, NO. CIV.A05CV00138, 2006 WL 2165022 (D.Colo. July 31, 2006) (finding

defendant prison officials entitled to qualified immunity in face of claims that inspection of medicine bags by defendant prison officials violated a prisoner's First Amendment free exercise rights). Accordingly, Plaintiff's putative First Amendment free exercise claim should be dismissed as well.[8]

There is a potential related claim, i.e., that not only did Defendant Gagnon search the medicine bag but he also made disparaging remarks about the contents of the medicine bag. Dkt. [12] at 9. However, such remarks do not, as a matter of law, deny a prisoner the free exercise of his religion. See, e.g., Excell v. Burge, No. 9:05-CV-1231, 2008 WL 4426647, at *9 (N.D.N.Y., Sept. 25, 2008) ("to the extent that defendants Hess, Devito, Bray, and Sourwine verbally harassed plaintiff about his religion or his headgear, they did not deprive plaintiff of his First Amendment right to practice his religion, and plaintiff's First Cause of Action may be dismissed as against these defendants"); Simon v. Montgomery, NO. CV07-01246, 2008 WL 2551297, at *7 (C.D.Cal. June 25, 2008)("Although framed in terms of Plaintiff's First Amendment 'Freedom of Religion,' Claim 5 is more accurately viewed as one asserting a constitutional violation by the ASH employees who verbally abused him, such as by calling his religion 'barbaric,' when he was in restraints after the April 21, 2006 incident. 'Verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.' Oltarzewski v. Ruggiero, 830 F.2d

---

[8] To the extent that qualified immunity would not be a defense as to Defendant Gagnon, given that Plaintiff seeks injunctive relief against Defendant Gagnon in the form of having him fired, we rest on the alternative holding that the inspection was reasonable as a matter of law under Turner. In addition, as noted, Plaintiff has been sent to a new prison, Dkt. [63] and hence, any injunctive relief against Defendants Gagnon (and Price and Miller, i.e., the only specific Defendants against whom Plaintiff seeks injunctive relief) would be moot. Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa. 1998)("Fortes' [i.e., the inmate] transfer to another institution moots any claims for injunctive or declaratory relief."); Marrie v. Nickels, 70 F.Supp.2d 1252, 1259 (D.Kan. 1999)("Generally, an inmate's transfer to another prison or release moots his request for declaratory or injunctive relief.") (collecting cases).

136, 139 (9th Cir. 1987) (quoting Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979)); see

Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir.1997) (quoting and following Oltarzewski

specifically '[a]s to' the plaintiff's claims of 'being subjected to abusive language directed at his

religious and ethnic background').");  Kollyns v. Hughes, No. C/A3:05-90, 2006 WL 2716407, at

*8 (D.S.C. Sept. 22, 2006)(collecting cases), aff'd, 258 Fed.Appx. 606 (4th Cir. 2007).[9]

(4)  Fourth Amendment claims

Plaintiff also invokes the Fourth Amendment as a basis for his suit.  It appears that

Plaintiff is complaining of the search and destruction of his property and claims that under the

Fourth Amendment such searches of his property and destruction thereof violate the Fourth

Amendment.  Plaintiff is simply wrong.

There is no doubt that the protections of the Fourth Amendment with respect to seizures

of a prisoner's "effects" or property **do not apply** in the prison context.  Doe v. Delie, 257 F.3d

309, 316 (3d Cir. 2001) ("The Hudson court confirmed that a Fourth Amendment right to be free

from unreasonable searches and seizures is inconsistent with incarceration."); Jones v. Arpaio,

194 F.3d 1317 (Table), 1999 WL 731062 , at *1 (9th Cir. 1999) ("Finally, there is no merit to

Valandingham's contention that jail officials violated his constitutional rights when they failed to

---

[9] It appears that Plaintiff may also be making a claim that verbal harassment violates his Eighth Amendment rights.  See, e.g., Dkt. [18] at 4 ("(S)ince the purpose of the eight [sic] Amendment is to prevent prison authorities from inflicting grossly undue punishment[,] it applies to wanton and unnecessary Verbal abuse as well as physical abuse.").  However, Plaintiff is wrong as a matter of law. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (holding verbal harassment generally does not violate the Eighth Amendment); Ivey v. Wilson, 832 F.2d 950, 953-55 (6th Cir. 1987) (holding that verbal abuse, harassment, or arbitrariness by prison officials toward an inmate does not qualify as punishment within the meaning of the Eighth Amendment); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (holding that verbal harassment or abuse, where sheriff laughed at plaintiff and threatened to hang him, was not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983);  Partee v. Cook County Sheriff's Office, 863 F.Supp. 778, 781 (N.D.Ill. 1994) (inmate's "allegations of verbal threats, racial epithets, and continued harassment" failed to meet objective component of Eighth Amendment).

return documents, correspondence, and postage seized following a search of his cell . . . *see* Hudson v. Palmer, 468 U.S. 517, 527-28 (1984) (holding that Fourth Amendment's prohibition against unreasonable seizures does not apply in prison)"). See also Hudson v. Palmer, 468 U.S. 517, 538 (O'Connor, J. concurring)("The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects"); Taylor v. Knapp, 871 F.2d 803 (9th Cir. 1989).  Likewise here, Plaintiff has no Fourth Amendment protections against the Defendants' treatment of his property.  Essentially, for purposes of analyzing the Fourth Amendment, Plaintiff has no possessory interests in the items seized or destroyed which society is prepared to accept as reasonable.  See, e.g., Hudson v. Palmer, 468 U.S. at 538 (O'Connor, J. concurring)("Since the exigencies of prison life authorize officials indefinitely to dispossess inmates of their possessions without specific reason, any losses that occur while the property is in official custody are simply not redressable by Fourth Amendment litigation.").  Cf. Hudson, 468 U.S. at 526 ("[S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.").  Accordingly, the Fourth Amendment claim is dismissed for failure to state a claim upon which relief can be granted.[10]

(5)  Fifth Amendment Claims

Plaintiff also invokes the Fifth Amendment, again, apparently in relation to the destruction of his property.  To the extent that Plaintiff seeks to invoke the Fifth Amendment's

---

[10]  To the extent that Plaintiff is complaining of a Fourth Amendment violation of his person (as opposed to his property) by the pat searches conducted by Defendant Gagnon, this claim is addressed below.

due process clause, such fails to state a claim as a matter of law because the Fifth Amendment's due process clause applies against Federal government actors whereas all of the defendants in the complaint are state government actors and so, are covered by the Fourteenth Amendment's due process clause which we have already analyzed above. Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997)("The Fifth Amendment obviously does not apply here--the acts complained of were committed by state rather than federal officials.").

To the extent Plaintiff seeks to invoke the protections of the Fifth Amendment "takings clause," as incorporated against the States via the Fourteenth Amendment's substantive due process clause, Plaintiff fails to state a claim. This is because Plaintiff alleged, at most in the complaint, that his property was either damaged or thrown out. This fails to state a claim because the Fifth Amendment takings clause is violated only when private property is taken for a public use, i.e., appropriated to a public benefit, not when it is simply damaged or thrown out by the government actor. See, e.g., Allen v. Wood, 970 F.Supp. 824, 831 (E.D.Wash. 1997) ("Plaintiff asserts the rejection of his mail constitutes a Fifth Amendment violation . . . Plaintiff fails to show that property he was authorized to receive was taken for public use."(citations omitted); Cohea v. California Dep't of Corr. & Rehabilitation, NO. CV 1-07-00469, 2009 WL 498289, at *5 (E.D.Cal. Feb. 26, 2009)(finding plaintiff failed to allege facts to support that his property was taken for any public use and, therefore, failed to state a Fifth Amendment takings claim). Accordingly, Plaintiff's Fifth Amendment claim is dismissed for failure to state a claim upon which relief can be granted.

(6)  Eighth Amendment claims

Next, we consider Plaintiff's Eighth Amendment claims.  The Supreme Court has explained that analysis of a violation of the Eighth Amendment cruel and unusual punishments clause in the context of a prisoner's challenges to the conditions of his confinement, involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of the person inflicting the harm.  See Wilson v. Seiter, 501 U.S. 294 (1991).  The Court of Appeals for the Third Circuit has explained the objective element as requiring proof that "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. . . .  If not, our inquiry is at an end."  Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000).  Although the "objective component of a cruel-and-unusual-punishment claim focuses on the harm done[,]" Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000), the Third Circuit Court of Appeals has cautioned that "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny."  Fuentes v. Wagner, 206 F.3d at 344 (*quoting* Whitley v. Albers, 475 U.S. 312, 319 (1986)) (internal quotes omitted).  In determining whether a harm "was sufficiently serious to fall within the Eighth Amendment's zone of protections", Fuentes v. Wagner, 206 F.3d at 344, the Third Circuit has described the inquiry as whether the prisoner has been deprived of the "minimal civilized measure of life's necessities."  Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992)(internal quotes omitted), *superseded by statute on other grounds as stated in* Ghana v. Holland, 226 F.3d 175, 184  (3d Cir. 2000).  To establish that one has been deprived of the minimal civilized measure of life's necessities requires a demonstration that one has been denied "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety" from physical assault.  Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997).

There are several potential Eighth Amendment claims here. One is the allegation that Defendant Gagnon handcuffed Plaintiff too tightly. Such a claim could be invoking Plaintiff's protection against the use of excessive force. See Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) ("Kopec alleges that Officer Tate placed handcuffs on him that were excessively tight and failed to respond to Kopec's repeated requests for them to be loosened. He estimates that it took Officer Tate ten minutes to loosen the handcuffs despite the severe pain they were causing and his efforts to secure their release. As a result, Kopec claims that he suffered permanent nerve damage to his right wrist. These facts, if credited, would establish that Officer Tate's use of force was excessive. . . ."). Here, as the Defendants point out, the complaint is utterly lacking any allegation that Plaintiff complained to Defendant Gagnon that the cuffs were too tight and that Gagnon failed to respond. Plaintiff did not address this specific argument in his response. The Court agrees that absent an allegation that Plaintiff informed Defendant Gagnon the handcuffs were too tight, or how long the cuffs were on too tightly, or that Defendant Gagnon ignored Plaintiff's complaints (if any), the civil rights complaint fails to state an Eighth Amendment claim of cruel and unusual punishment under Twombly.

The other potential Eighth Amendment claim is that Plaintiff was being sexually harassed by Defendant Gagnon's conducting of pat searches. Such could state a claim. See, e.g., Henthorn v. Hester, 56 F.3d 64 (Table), 1995 WL 299031 (6th Cir. 1995)(addressing case claiming Eighth Amendment violation based upon allegation that pat down search was sexual harassment). However, this claim must be dismissed for failure to exhaust because, by his own admission, as of the filing of the complaint, Plaintiff had not yet fully exhausted his administrative remedies with respect to this claim of alleged sexual harassment, specifically

23

noting that he had a currently pending grievance appeal concerning this claim in the Central Office of Appeals. Dkt. [12] at 4. Hence, we conclude that the complaint "explicitly conceded [Plaintiff's] failure to exhaust administrative remedies" and dismissal is proper pursuant to this "district court's inherent power to dismiss sua sponte a complaint which facially violates a bar to suit." Ray v. Kertes, 285 F.3d 287, 293 n.5. (3d Cir. 2002).

The rule is that "[t]he 'available' 'remed[y]' must be 'exhausted' **before** a complaint under § 1983 may be entertained." Booth v. Churner, 532 U.S. 731, 738 (2001)(emphasis added). Accord Dancy v. Collier, 266 Fed.Appx. 102, 104 (3d Cir. Feb. 20, 2008)("A prisoner who challenges prison conditions must exhaust available administrative remedies **before** filing suit in federal court.")(emphasis added); Oriakhi v. U.S., 165 Fed.Appx. 991, 993 (3d Cir. 2006) ("Oriakhi's administrative remedies were not exhausted prior to the initiation of suit. The fact that he completed the administrative review process before the District Court reached the exhaustion question is of no consequence. Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court."). Moreover, the rule contemplates that a prisoner must await the response to final appeal prior to initiating the civil rights action. Brower v. Georgia Dept. of Corrections, No. CV 307-031, 2008 WL 282473, at *4 n. 2 (S.D.Ga. Jan.31, 2008) (finding failure to exhaust where plaintiff commenced suit prior to deadline for the Commissioner's response to Plaintiff's administrative appeal). Because the allegations in the complaint establish that Plaintiff has failed to exhaust his administrative

remedies with respect to this claim prior to filing the instant suit, this claim must be dismissed, albeit without prejudice for failure to exhaust.[11]

Lastly, Plaintiff claims that the Defendants committed a "tort" against him. Dkt. [12] at 3, ¶ III. He oftentimes speaks in terms of negligence in his complaint. See, e.g., Dkt. [12] at 10 ("This is negligence on their parts."); id., at 11 (That is negligence, isn't it"). In addition, it appears that Plaintiff is attempting to claim that the Defendants engaged in the common law tort of extortion when they destroyed his property. See, e.g., Dkt. [45] at 6 to 8. To the extent that Plaintiff is seeking to raise state law claims of negligence or extortion, the Court declines to exercise supplemental jurisdiction given that all federal claims are being dismissed.[12]

---

[11] It is also possible that Plaintiff is attempting to make out a Fourth Amendment claim here as well concerning the searches. However, the Fourth Amendment claim is dismissible on the same basis as the Eighth Amendment claim, i.e., failure to exhaust prior to commencing this action. Furthermore, it appears that Plaintiff is attempting to make out a Fourteenth Amendment equal protection claim based on the pat searches being allegedly sexual harassment. See Dkt. [18] at 2 (memorandum of law in support of the complaint wherein Plaintiff stated "As the 14th Amendment protects me by the Equal Protection Clause, of not being Sexually Discriminated against, those principles are the same for men and woman [sic] in 'Sexual Harassment and Assualt', [sic] that was always happening by Officer Fokol [sic] when ever he was on the A-B side walkways . . ."). Again, because Plaintiff failed to exhaust his claims against Defendant Sokol based on the alleged sexual harassment prior to filing this suit, no matter what the legal basis for the claim, it must be dismissed.

[12] To the extent that Plaintiff means by his reference to "extortion" to claim that the Defendants violated the federal criminal statute, barring extortion, and he thereby attempts to bring a cause of action under Section 1983, the Court then dismisses the federal law claim of extortion because Plaintiff has no private cause of action under the federal criminal extortion statute. See, e.g., Alexandre v. Phibbs, 116 F.3d 482 (TABLE), 1997 WL 341830, at *1 (9th Cir.1997) wherein the court held has follows:

The second federally protected right Alexandre asserts to support her § 1983 claim is the federal criminal law prohibiting extortion. See 18 U.S.C. § 1951. However, Alexandre cites to no law suggesting she may predicate a § 1983 claim upon the violation of a federal criminal statute. Generally, in order to seek redress under § 1983, there must be a private right of action to enforce the underlying federal statute. See Keaukaha-Panaewa Comm. v. Hawaiian Homes, 739 F.2d 1467, 1470-71 (9th Cir. 1984); see also Blessing v. Freestone, 117 S.Ct. 1353, 1359-60 (1997). The federal extortion statute does not provide a private right of action. See 18 U.S.C. § 1951; cf. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir.1994) (dismissing claims

An appropriate Order follows.


/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge


cc:    Clay Caldwell
       EM-2163
       S.C.I. Greensburg
       165 SCI Lane
       Greensburg, PA 15601-9103

       All counsel of record by Notice of Electronic Filing

---

brought under federal criminal statute because it did not provide private cause of action). Thus, Alexandre cannot raise a § 1983 based on the federal criminal extortion statute.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLAY CALDWELL,                          )
                                        )
                Plaintiff,              )
                                        )
        v.                              )       Case No. 2:08-cv-00122
                                        )
SUPERINTENDENT LOUIS FOLINO;            )       Chief Magistrate Judge Amy Reynolds Hay
LIEUTENANT M.A. PRICE; SGT.             )
GAGNON; C.O. J. MILLER; C.O.            )
LUKACHYK; C.O. TOPKA; C.O. SOKOL;       )
JEFFREY A. BEARD, Secretary of          )
Correction; and LT. NORMAN,             )
                                        )
                Defendants.             )


ORDER

AND NOW, this 30th day of June 2009, for the reasons set forth in the accompanying

Memorandum Opinion, IT IS HEREBY ORDERED that the Motion to Dismiss filed by the DOC

Defendants, Dkt. [40], is hereby granted in part and denied in part.  It is GRANTED as to all

claims against all defendants except it is DENIED as to the claims against Defendant Gagnon

based upon the alleged sexual harassment, which the Defendants sought to have dismissed on the

merits.  However, such claims against Defendant Gagnon, although not dismissed on the merits

as requested by the Defendants, are hereby DISMISSED *sua sponte* pursuant to this Court's

inherent power, for failure to exhaust prior to commencing this suit, such dismissal being without

prejudice.  To the extent that the Plaintiff is raising state law claims, the Court hereby

DECLINES to exercise supplemental jurisdiction.  The Clerk is to mark the case closed.

                                        /s/ Amy Reynolds Hay
                                        Chief United States Magistrate Judge

cc:     Clay Caldwell

EM-2163
S.C.I. Greensburg
165 SCI Lane
Greensburg, PA 15601-9103

Counsel of Record via CM-ECF