IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLAY CALDWELL,                           )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )        Case No. 2:08-cv-00122
                                         )
SUPERINTENDENT LOUIS FOLINO;             )
LIEUTENANT M.A. PRICE; SGT.              )        Magistrate Judge Maureen P. Kelly
GAGNON; C.O. J. MILLER; C.O.             )
LUKACHYK; C.O. TOPKA;                    )        [ECF Nos. 112, 114 and 141]
C.O. SOKOL);JEFFREY A. BEARD,            )
Secretary of Correction; and            )
LT. NORMAN,                              )
                                         )
        Defendants.                      )

## OPINION

**KELLY, Magistrate Judge:**

Plaintiff Clay Caldwell ("Caldwell" or "Plaintiff") and all Department of Corrections Defendants have filed Motions for Summary Judgment.[1]  For the following reasons, the Defendants' Motion for Summary Judgment is granted in part and denied in part.  Plaintiff's Motion for Summary Judgment is denied.  In addition, Plaintiff's separately filed Motion for Default Judgment [ECF No. 141] is denied.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this *pro se* civil rights action against seven corrections officers from

---

[1] Defendants' Motion for Summary Judgment is filed on behalf of six Defendants who had been dismissed from this case by Order entered June 30, 2009; specifically, Defendants Folina, Price, Miller, Topka, Beard and Norman.  In his appeal of the June 2009 Order, Plaintiff acknowledged that he was not appealing the dismissal of claims against these six Defendants.  Accordingly, these six Defendants are no longer parties to this action.

SCI-Greene, the prison superintendent, and the Pennsylvania Secretary of Corrections

("Defendants").  He alleges, inter alia, that his constitutional rights were violated when he was

touched in a sexual manner during pat-down searches and because he was required to obtain a

permit to keep his Native American religious items in his cell.

After dismissal of Plaintiff's Complaint for failure to exhaust the prison grievance

procedure and for failure to state a claim upon which relief can be granted, Caldwell filed a

timely appeal to the United States Court of Appeals for the Third Circuit, which appointed *pro*

*bono* counsel.  On appeal, Caldwell contended that the District Court improperly dismissed his

Eighth Amendment claim based upon the Court's *sua sponte* finding of lack of exhaustion and

further erred in failing to address his Equal Protection claim relating to religious discrimination.[2]

The Court of Appeals concluded that because the affirmative defense of failure to exhaust was

not apparent from the face of Caldwell's complaint, the Court erred by *sua sponte* dismissing

---

[2] In his appeal, Plaintiff acknowledged his waiver of all other issues and claims set forth in his
Complaint :

> "Mr. Caldwell no longer presses his claims under the First, Fourth and Fifth
> Amendments, or under the Fourteenth Amendment due process clause… Further,
> Mr. Caldwell does not appeal the District Court's dismissal of Caldwell's claims
> against defendants Folino, Beard, Price, Miller, Topka, and Norman.  As
> discussed below, Caldwell appeals the dismissal of his Eighth Amendment claim
> against Defendant Sokol regarding allegations of sexual abuse, as well as his
> Equal Protection claim against defendants Lukachyk and Gagnon regarding
> religious discrimination."

No. 09-3104, Document No. 003110118425, p. 9.  Similarly, Plaintiff did not "appeal the
District Court's dismissal of his First Amendment claim arising out of Defendants' search of his
medicine bag and their insulting remarks of his religious objects."  Id., at p. 25.  Accordingly, the
only claims remaining before the Court are Plaintiff's Eighth Amendment claim and his Equal
Protection claim (limited to the issue of the propriety of a permit requirement to possess certain
Native American religious objects).

Plaintiff's Eighth Amendment claim.  With regard to Plaintiff's Equal Protection Claim arising

out of alleged religious discrimination, the Court of Appeals concluded that the Court erred by

failing to address the claim.  Accordingly, the Court of Appeals remanded this action for further

proceedings with regard to the two issues before it.

Defendants filed their Answer to Plaintiff's Complaint, raising the affirmative defense of

failure to exhaust administrative remedies as required by the Prison Litigation Reform Act

("PLRA"), 42 U.S.C. § 1997e (a), and filed a Motion for Summary Judgment on this basis as to

both of Plaintiff's claims.  Defendant's Motion for Summary Judgment also challenges the

merits of Plaintiff's Equal Protection claim with regard to the requirement that he have a permit

to possess certain religious items in his special housing unit cell.  Plaintiff has filed a Motion for

Summary Judgment, contending that because Defendant's Answer was not filed until five

months after the remand of this action, he is entitled to the entry of judgment in his favor.[3]  In

addition, Plaintiff contends he is entitled to the entry of judgment in his favor because the

defense of failure to exhaust was not properly preserved by the Defendants and, in any event, he

complied with the grievance procedure.  Both parties have filed responses to the Motions, which

are now ripe for consideration.

---

[3] By Order dated July 13, 2011, the Court denied Plaintiff's separately filed Motion for Summary
Judgment, raising Defendant's failure to timely file an Answer to the Complaint as grounds for
the entry of judgment in Plaintiff's favor as a matter of law.  [ECF No. 136].  As made clear by
the Order, the five month delay in filing the Answer after remand from Plaintiff's appeal has not
resulted in any prejudice to Plaintiff and appears to have been the result of the combined
procedural anomalies of the unexpected death of Chief Magistrate Amy Reynolds Hay, the
remand of the action after appeal of Defendants' Motion to Dismiss, and the subsequent issuance
of an interim case management order.  Inasmuch as Plaintiff has again raised the untimely filing
of Defendant's Answer as grounds for judgment in his favor in both the instant Motion for
Summary Judgment and the subsequently filed Motion for Default Judgment at ECF No. 141,
both Motions are denied as, again, no prejudice has been sustained as a result of the Defendant's
late filing and Plaintiff is not entitled to the entry of judgment in his favor as a matter of law on
this basis. See, Memorandum Order [ECF No. 108, p. 4].

## II.     STANDARD OF REVIEW

Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir.1992).

Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. There must be enough

evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party.  Id. at 248.  A party asserting that a fact is genuinely disputed must support the assertion by citing to depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1).

**III. DISCUSSION**.

 A.    **Exhustion of Eighth Amendment and Equal Protection Claims**.

Defendants contend that they are entitled to the entry of judgment in their favor as a matter of law with regard to Plaintiff's Eighth Amendment and Equal Protection claims because Plaintiff did not comply with all requirements of the Pennsylvania Inmate Grievance System and thereby failed to exhaust all administrative remedies available to him.  This affirmative defense, asserted by way of Defendant's Answer to the Complaint filed on March 2, 2011, raises questions concerning the application of the Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e(a), where substantial but imperfect compliance with the Inmate Grievance System has occurred.

1.    **Plaintiff's Eighth Amendment Claim is not barred**.

Plaintiff's alleged failure to timely pursue administrative remedies may have substantive significance for the Plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under ... [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1197e(a).  The exhaustion requirement of Section 1997e applies to a wide-range of inmate complaints, including complaints like those made by Caldwell grounded in alleged violations of the Eighth

Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289

(3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, the

requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a

fundamental recognition that exhaustion requirement of § 1997e promotes important public

policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion
> requirements. They include (1) avoiding premature interruption of the
> administrative process and giving the agency a chance to discover and correct its
> own errors; (2) conserving scarce judicial resources, since the complaining party
> may be successful in vindicating his rights in the administrative process and the
> courts may never have to intervene; and (3) improving the efficacy of the
> administrative process. Each of these policies, which Congress seems to have had
> in mind in enacting the PLRA, is advanced by the across-the-board, mandatory
> exhaustion requirement in § 1997e(a).... [A] comprehensive exhaustion
> requirement better serves the policy of granting an agency the "opportunity to
> correct its own mistakes with respect to the programs it administers before it is
> haled into federal court." Moreover, "even if the complaining prisoner seeks only
> money damages, the prisoner may be successful in having the [prison] halt the
> infringing practice" or fashion some other remedy, such as returning personal
> property, reforming personal property policies, firing an abusive prison guard, or
> creating a better screening process for hiring such guards. And when a prisoner
> obtains some measure of affirmative relief, he may elect not to pursue his claim
> for damages. In either case, local actors are given the chance to address local
> problems, and at the very least, the time frame for the prisoner's damages is
> frozen or the isolated acts of abuse are prevented from recurring. An across-the-
> board exhaustion requirement also promotes judicial efficiency.... Moreover, even
> if only a small percentage of cases settle, the federal courts are saved the time
> normally spent hearing such actions and multiple appeals thereto.... In cases in
> which inmate-plaintiffs exhaust their remedies in the administrative process and
> continue to pursue their claims in federal court, there is still much to be gained.
> The administrative process can serve to create a record for subsequent
> proceedings, it can be used to help focus and clarify poorly pled or confusing
> claims, and it forces the prison to justify or explain its internal procedures. All of
> these functions help courts navigate the sea of prisoner litigation in a manner that
> affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75–76 (3d Cir. 2000) (citations omitted). Because of the important

policies fostered by this exhaustion requirement, it has been held that there is no futility

exception to the exhaustion requirement. Id.  Instead, courts have typically required across-the-

board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to the Section 1997e exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir .2006). Applying this procedural default component, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with the statutory exhaustion requirement. Harris v. Armstrong, 149 F.App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). An inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

This broad rule, however, admits of one exception, an exception with potential application here. If the actions of prison officials in some fashion contributed to inmate's

procedural default on a grievance, the inmate will not be held to strict compliance with this

exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts

have recognized a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to

exhaust as the statute requires." Davis v. Warman, 49 F.App'x 365, 368 (3d Cir. 2002). Thus, an

inmate's failure to exhaust will only be excused "under certain limited circumstances," and an

inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was

some extraordinary reason he was prevented from complying with the statutory mandate." Harris

v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005); Davis v. Warman, supra, 49 F. App'x at 368.

The grievance procedures in effect at SCI–Greene during the relevant time are set forth in

Policy DC–ADM 804. [ECF No. 116-1, pp. 5-22]. The policy outlines a three-tier grievance

procedure. First, within 15 days of the events alleged in the grievance, the inmate is required to

fill out an initial grievance on a DC-804, Part 1 – Grievance Form. The grievance form must

include "a statement of the facts relevant to the claim" and the form must be filed with the

Facility Grievance Coordinator (Step 1). If the inmate is dissatisfied with the initial review

decision, he or she may appeal to the Facility Manager, usually the Superintendent of the

inmate's respective Institution (Step 2). The policy requires than an inmate label the appeal as

such on the document and "clearly identify the Initial Review decision and the basis for the

appeal." In particular:

> d. The text of an appeal must be legible, ***understandable***, and presented in a
> courteous manner, and the statement of facts may not exceed two pages (two one-
> sided or one double-sided 8 ½" by 11" page.
>
> e. Each appeal must be clearly labeled as an appeal at the top of the document. In
> cases appealing an Initial Review decision, the appeal must also include the
> grievance number at the top of the document. The appeal must clearly identify
> the Initial Review decision and the basis for the appeal. If the inmate is also
> appealing a determination of frivolousness, he/she will clearly indicate that he/she
> is also appealing that determination. Only one appeal of any Initial Review will

be permitted.  Failure to comply may result in the appeal being dismissed.

 DC-ADM 804, Part VI.C.1. (emphasis in original).  [ECF No. 116-1, p. 12].  When an inmate

has received a disposition of his appeal to the Superintendent, the inmate may appeal to the

Secretary's Office of Inmate Grievances and Appeals and seek Final Review within 15 working

days (Step 3) and:

> d.  An appeal at this level may not be permitted until the inmate has complied
> with all procedures established for Initial Review and Appeal to Facility
> Manager…
>
> e.   The text of his/her appeal to the Secretary's Office of Inmate Grievances and
> Appeals shall be legible, ***understandable***, ***and*** presented in a courteous manner,
> and the statement of facts must not exceed two pages (**two one-sided or one
> double-sided 8-1/2" x 11" page).**
> *   *   *
> g.  An inmate appealing a grievance to final review is responsible for providing
> the Secretary's Office of Inmate Grievances and Appeals with all required
> documentation relevant to the appeal.  A proper appeal to final review shall
> include photocopies of the initial grievance, initial review response, the inmate
> appeal to the Facility Manager, and the Facility Manager's decision.  Failure to
> provide the proper documentation may result in the appeal being dismissed.

DC-ADM 804, Part IV.D.1. (emphasis in original).  [ECF No. 116-1, pp. 13-14].  In contrast to

the procedures governing the filing of an appeal with the Facility Manager (Step 2), which make

clear that "[t]he appeal must clearly identify the Initial Review decision and the basis for the

appeal," a Step 3 appeal to the Secretary's Office of Inmate Grievances and Appeals does not

require an inmate to identify the Facility Manager decision and the basis for the appeal.  Instead,

the procedures simply require that "the appeal" to the Secretary be limited to two pages and that

photocopies of the grievance record through Steps 1 and 2 be provided.

 In this case, the record shows that Plaintiff complied with each step of the process

through Steps 1 and 2.  Upon receiving a ruling denying his Step 2 appeal, Plaintiff began a Step

3 appeal to the Secretary's Office. Plaintiff timely submitted copies of the entire grievance record and included his two-page "Appeal" to the Facility Manager, which was legible, understandable and courteous. Plaintiff did not submit an additional document identifying the Facility Manager's decision and the basis for appeal from that decision.  Plaintiff was sent an Action report, informing him that his appeal was incomplete. [ECF No. 116-1, p. 40]. This report indicated that in order to perfect his appeal, he was required to comply with the procedures set forth in DC-ADM 804 and, within ten days, send "your appeal to final review, signed and dated."   The Action report did not provide any information defining an "appeal to final review."

In support of their Motion for Summary Judgment, Defendants provide the Affidavit of Michael Bell, Administrative Officer in the DOC Grievance Review Office.  Bell explains "[i]nmate Caldwell first sent his grievance packet to final review on October 11, 2007. However, this packet failed to include a signed and dated 'appeal to final review' *which is expected to state the inmate's points of appeal or his reasons for appealing the Superintendent's response."* [ECF No. 116-1, p. 26 (italics added)].  This expectation is not stated anywhere in the DOC Policy or in the Action report which was forwarded to Plaintiff.  Without a definition of an "appeal to final review," Plaintiff apparently believed he had complied with all DC-ADM 804 requirements but assumed his appeal documents were not received.  Accordingly, he submitted a second set of his appeal documents, but again omitted an "appeal to final review" stating his "points of appeal."  Because of this omission, Plaintiff's grievance related to the sexual touching claim was dismissed.  Defendants contend that Plaintiff's failure to properly complete the final review process bars this action as a matter of law.

The Court is sympathetic to Plaintiff's justifiable confusion concerning whether his

"appeal" to the DOC Secretary's Office was complete.  DC-ADM 804, read in its entirety, does not require the identification of the Facility Manager Decision or assertions of error in order to perfect an appeal to the DOC Secretary's Office.  In addition, the Action Report, using language identical to the Policy at issue, merely required that Plaintiff file his "appeal to final review, signed and dated."  Given the absence of any indication as to what an "appeal to final review" required, it is understandable that Plaintiff again submitted the identical packet of documents to perfect his appeal to the DOC Secretary.

Plaintiff's attempt to comply with the Action Report by resubmitting his appeal stands in contrast to those cases where noncompliance has been found to preclude a finding of administrative exhaustion.  In Rivera v. Pennsylvania Dept. of Corrections, 2010 WL 339854 (No. 09-1009) (W.D. Pa. (Jan. 22, 2010)), an inmate filed a grievance which was returned because it exceeded the two page limit.  The inmate was instructed that he could resubmit his grievance if it was limited to two pages.  Instead of correcting the grievance, the inmate filed appeals to the Facility Manager and the DOC Secretary's Office arguing that the two page limit was invalid on First Amendment grounds.  These appeals were dismissed because of the inmate's failure to comply with the two page requirement.  The inmate's subsequently filed civil rights action was dismissed pursuant to the PLRA based on his failure to exhaust the administrative remedies available to him.  The Court held that the inmate's refusal to even attempt to comply with the rules for filing administrative appeals precluded a finding of substantial compliance with the grievance procedures.  Similarly, in Keys v. Craig, 160 F.App'x 125 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit found that a prisoner whose administrative appeal was not acted upon because he failed to attach the required documentation had not "substantially complied" with the grievance process when he filed the

documents late and with the wrong party.  And, in <u>Lee v. Lindsey</u>, 2009 WL 1076390 (M.D. Pa.

April 21, 2009), a prisoner was found not to have substantially complied with the prison's

administrative procedure where he failed to file a grievance on the proper form, was told of this

defect, and failed to timely submit an amended grievance.

 Here, Plaintiff was sent an Action Report, explaining that his appeal to the DOC

Secretary's Office was defective because he was missing his "appeal to review, signed and

dated."  It is apparent from Plaintiff's brief in support of his Motion for Summary Judgment that

Plaintiff believes the Secretary never received his initial appeal packet and so his "appeal" was

missing. [ECF No. 113, p. 2].  Accordingly, Plaintiff timely resubmitted his entire grievance

record.  Under these circumstances, the Court is reluctant to find that Plaintiff has failed to

exhaust the administrative remedies available to him.  <u>See, e.g.</u>, <u>Wilson v. Unknown Budgeon</u>,

2007 WL 464700 (No.05-2101) (February 13, 2007, M.D. Pa.), <u>aff'd</u>,  248 F.App'x 348, 350 (3d

Cir. 2007)(confusion concerning grievance procedure resulting from information provided by

corrections staff excused failure to exhaust administrative remedy).  This is not a situation where

Plaintiff was provided guidance on a missing form or documentation and simply ignored the

directions and refused to perfect his appeal; nor is this a situation where Plaintiff challenged the

validity of the regulations.  Instead, Plaintiff appears to have been justifiably confused by the

absence of guidance in the regulations and the Action Report as to the requirements of an

"appeal to final review, signed and dated" to be filed with the Secretary's Office.  Accordingly,

the Court finds that Plaintiff's Step 3 appeal was imperfect, but in substantial compliance with

the procedural requirements of the Inmate Grievance System, and accordingly, his failure to

exhaust the administrative procedures available to him is excused.  Defendants' Motion for

Summary Judgment as to Plaintiff's Eighth Amendment claim is denied.

**2.     Plaintiff's Equal Protection Claim is not barred**.

Defendants' contention that the Plaintiff failed to exhaust the inmate grievance procedure with regard to his Equal Protection claim is unsupported by the record currently before the Court. Defendants, on appeal, conceded that "it remains unclear on the extant record if exhaustion [with regard to his Equal Protection claim] was attempted or accomplished."  Defendants, seeking to provide clarity, now provide the Affidavit of Michael Bell, who broadly states that Plaintiff never filed a timely grievance contesting the requirement to procure a permit to retain possession of his religious property.  [ECF No. 116-1, p. 27].  Plaintiff counters with a list of his Grievance Records, which appear to indicate that he did bring two grievances, Nos. 208286 and 207648, concerning his medicine bag.  [ECF No. 113-1, p. 6]. Unfortunately, the content of the grievances is not provided.  Accordingly, it would have been appropriate for Defendants to provide the necessary documentation supporting their contention that Plaintiff did not seek "final review of any grievance … challeng[ing] as religious discrimination the requirement that he obtain a permit from the Department in order to have a medicine bag and prayer feather in his cell."  [ECF No. 115, p. 10].  Defendants' failure to document the "failure to exhaust" claim renders impossible a decision on the merits at this time as there is a genuine issue of material fact.  In the absence of documentation supporting Defendant's contention that the Plaintiff failed to exhaust all administrative remedies available to him, Defendants' Motion for Summary Judgment as to the Equal Protection claim is denied without prejudice.

**B.   Equal Protection Claim.**

In his appeal to the United States Court of Appeals for the Third Circuit, Plaintiff did not

seek review of the dismissal of his claims arising under the First Amendment with regard to

Defendants' search of his medicine bag and insulting remarks concerning his religious items.

[See, No. 09-3104, Document 003110118425, p. 24].  As discerned by the Court of Appeals, the

only claim remaining with regard to religious discrimination concerned the requirement that

American Indians procure a permit to possess religious items when such a permit is not required

for other religious communities.  As alleged by Plaintiff in his Complaint:

> And for the religious discrimination by Sgt. Gagnon and C.O. Lukachyk, where
> I'm told I have to have a permit in order to have my medicine bag and prayer
> feather in my cell.  The [Department of Corrections] does not tell the Christian
> and the Muslim communities this for their prayer rugs, [unintelligible], rossory
> [sic] beads, crosses, Star of David, so on.  But as an American Indian I need a
> permit for my scared [sic] items, of my way of life + beliefs.  This is religious +
> belief discrimination.

[ECF No. 12, p. 31].  Plaintiff on appeal contended that these allegations "make out a claim that

Defendants violated Caldwell's right to equal protection of the law under the Fourteenth

Amendment."  Id.  The Court of Appeals remanded this claim for further proceedings, finding

that the issue had not been addressed by the Court below.[4]

---

[4] Plaintiff's Memorandum of Law in Support of his Motion for Summary Judgment raises new
claims not previously asserted pursuant to the Religious Land Use and Institutionalized Persons
Act, 42 U.S.C. § 2000cc et seq. (RLUIPA) and the Religious Freedom Restoration Act
("RFRA"), 42 U.S.C. 42 U.S.C. § 2000bb.  With respect to alleged religious discrimination,
however, Plaintiff's Fourteenth Amendment Equal Protection Claim is the only claim preserved
on appeal and remaining on remand.  The United States Supreme Court has held that the RFRA
is unconstitutional as applied to state and local governments and, as such, Plaintiff cannot sustain
a cause of action pursuant to the RFRA as a matter of law.  City of Boerne v. Flores, 521 U.S.
507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

Plaintiff's claim arises out of his desire to keep a medicine bag and prayer feather with him in the Restricted Housing Unit.  Plaintiff appended to his Complaint a copy of two "Inmate's Request to Staff Member" forms seeking information and an explanation regarding a required permit for him to possess his religious items in his cell.  [ECF No. 12, p. 47-48].  His DOC Spiritual Advisor, Sister Lydia Hale, informed him that she would provide the required form and assist in its completion so that he could obtain and/or keep the items at issue.  [ECF No. 12, pp. 47-48].  Plaintiff, however, challenges the permit requirement as a burden placed on American Indians, which he alleges is not placed upon other religious communities.

Defendants have provided copies of the DOC policies at issue, which, in relevant part, make clear that a permit is required for all religious property without regard to religion:

C. Religious Articles and Accoutrements

1.    General Provisions

a.   All religious articles and accoutrements must be authorized by the FCPD.

b.   All religious items must be purchased and mailed directly from an approved vendor or distributor by the FCPD/designee.  The FCPD must authorize the purchase of all religious items by signature on the DC-815-A, Outside Purchase Approval form.  Homemade or other unauthorized items will not be permitted.  The religious articles must be purchased from

---

Further, with regard to Plaintiff's newly asserted claim pursuant to the RLUIPA, this Court has previously held that the challenged DOC Policy (DC-ADM 819) does not violate the RLUIPA. Piskanin v. Rendell, 2008 WL 4442004 (No. 06-129J) (W.D. Pa. September 30, 2008). A claim under RLUIPA includes four elements: (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial.  Spratt v. Rhode Island Dept. Of Corrections, 482 F.3d 33, 38 (1st Cir. 2007). Once a plaintiff has established that his religious exercise has been substantially burdened, the onus shifts to the government to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest.  Id.  Because the regulations at issue do not preclude access to the requested items, this Court has found that an inmate's exercise of religion is not substantially burdened.  Finally, RLUIPA does not support damage claims against state officials in their individual capacity.  Sharp v. Johnson, 2008 WL 941686, at *19 (W.D. Pa. 2008). Plaintiff's claim under the RLUIPA therefore fails as a matter of law.

an approved vendor in accordance with Department policy DC-ADM 815, "Personal Property, Basic/State Issued Items, and Commissary/Outside Purchases." All packages must include the vendor's label or stamp.

\* \* \*

3. Religious Articles

a. All ritual supplies and accoutrements must be maintained and secured in the chapel area by the appropriate Faith Group Leader or the FCPD. Practicing members of each faith group are permitted to possess the following items that are relevant to their faith. These include:

(1) Medicine Bag (not to exceed two inches by two inches in size)

(a) Inmates of a Native American Faith Group may wear the medicine bag throughout the facility with the exception of the visiting room, outside job details, and while working in Food Service or other areas where food is processed.

(b) The medicine bag shall be purchased from an approved vendor. The FCPD will provide the inmate with the list of vendors.

(c) The medicine bag shall be opened by the Native American to be searched. A non-Native American shall not touch the contents of the medicine bag. If an inmate refuses to allow the bag to be searched, the bag shall be confiscated and a **DC-154A, Confiscated Items Receipt (Inmate)**, shall be issued by the staff member confiscating the item.

(d) The contents of the medicine bag must be approved by the FCPD and the Native American Faith Group Leader and of list of the approved items for each inmate's shall be maintained. A medicine bag may contain:

(1) a small piece of pipestone;
(2) a pinch of tobacco;
(3) sage;
(4) sweet grass;
(5) cedar;
(6) a kernel of corn or grain; and
(7) other such items sacred to the wearer.

\* \* \*

(2) Sacred Prayer Feather

A sacred prayer feather may be used during Native American services. All other times the sacred prayer feather is to be kept in the cell for private

16

worship.

(3) Prayer Rugs

Inmates of faiths that use prayer rugs are permitted to possess only one prayer rug, no larger than 30 x 48 inches, excluding the fringe. The FCPD must approve the prayer rug. These rugs are not to be confused with rugs purchased from the commissary.

\* \* \*

(d) Religious headgear must be approved for purchase by the FCPD. It shall not be homemade.

\* \* \*

5. Incense and Oils

Incense and oils are permitted only during religious services. Only the FCPD/designee shall bring them into the facility. Incense and oils shall be procured and secured under the control of the FCPD/designee. Any inmate in possession of incense or oil shall be in the possession of contraband.

6. Religious Beads

a. All religious beads may be of any color and are limited to 1/4" diameter. Each inmate is limited to one set of beads. All religious beads used by inmates of the Catholic religion (Rosary Beads), Islamic religion (Dhikr Beads), Buddhist religion (Prayer Beads), or other faith groups, must be approved by the FCPD, and may only be used for their intended purpose.

b. Any inmate in possession of religious beads not approved by the FCPD, or using them in any manner other than their intended purpose is in possession of contraband.

[ECF No. 116-1, pp. 47-50].  As is readily apparent, prayer rugs used by Muslims, rosary beads used by Catholics, religious medallions, and medicine bags are all subject to approval by the DOC.

Plaintiff's Equal Protection claim fails as a matter of law. "The Equal Protection Clause ... is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

The Court of Appeals for the Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.' "Artway v. Attorney Gen., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, 473 U.S. at 439 (emphasis in original). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994). To bring a successful Equal Protection claim, therefore, a plaintiff must prove the existence of purposeful discrimination, and demonstrate that he was treated differently from similarly situated individuals. See Washam v. Klopotoski, 403 F. App'x 636, 639 (3d Cir. 2010), Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992); Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).

Caldwell must therefore show that he was similarly situated to, and treated differently than, other inmates seeking possession of religious items. Although Caldwell contends that other religious groups are permitted to possess religious items without a permit, he has failed to come forward with evidence that any particular inmate of another religion was permitted to possess a religious item without a permit or DOC approval. There is no evidence to suggest that the SCI-Greensburg American Indian population has been required to follow any regulations, or encountered any impediments, that other religious groups have not encountered in procuring or possessing religious items such as rosary beads or prayer rugs. Indeed, as is apparent from the regulations at issue, all inmates of all religions are required to obtain DOC approval for the possession and/or procurement of religious items. In opposing summary judgment, Plaintiff cannot "rely on allegations or denials in [his] own pleadings; rather, [his] response must … set

out specific facts showing a genuine issue for trial."[5] Fed.R.Civ.P. 56(e)(2).  In the absence of competent evidence to establish a genuine issue of material fact with regard to Plaintiff's Equal Protection Claim, Defendants' Motion for Summary Judgment is granted.


**IV.     CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment [ECF No. 114] is DENIED with regard to Plaintiff's Eighth Amendment Claim and is GRANTED with regard to Plaintiff's Equal Protection Claim.  Plaintiff's Motion for Summary Judgment [ECF No. 112] as to his Eighth Amendment and Equal Protection claims is DENIED.  Plaintiff's Motion for Default Judgment [ECF No. 141] is also DENIED.  An appropriate Order follows.


cc:     Clay Caldwell
        EM-2163
        S.C.I. Greensburg
        165 SCI Lane
        Greensburg, PA 15601-9103

        All counsel of record via CM/ECF

---

[5] Plaintiff has not submitted any affidavits, statement or evidence of any kind to support his claim of disparate religious treatment.

19